## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

GREAT AMERICAN SECURITY
INSURANCE COMPANY,

          Plaintiff,

v.

ARDEN TRUST COMPANY,

          Defendant.

Case No.:

## **COMPLAINT**

Plaintiff Great American Security Insurance Company ("Great American") alleges as follows for its Declaratory Judgment Complaint against Defendant Arden Trust Company ("Arden"):

## **NATURE OF THE ACTION**

1.      This is an action for a declaration that the insurance policy issued by Great American to Arden does not afford coverage for the lawsuit captioned, *The Kili/Bikini/Ejit Local Government, on behalf of The People Of Bikini et al. v. Arden Trust Company, NA*, pending in the Court of Chancery of the State of Delaware, Case No. 2024-0866-NAC (the "*Kili* Action").

## **PARTIES**

2.      Plaintiff Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

3.      Defendant Arden is a Delaware corporation with its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

4.      This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 that seeks a binding declaration and such other relief as may be necessary and proper.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  As shown in the above paragraphs, there is complete diversity of citizenship between the parties.  Based upon information and belief, the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant Arden is a resident of Delaware, and the *Kili* Action is pending in a Delaware Chancelry Court within this District.

## GENERAL ALLEGATIONS

### The *Kili* Action

7.      The *Kili* Action was filed on August 19, 2024, in the Court of Chancery of the State of Delaware.  A true and correct copy of the *Kili* Action original complaint (the "*Kili* OC") is attached hereto as **Exhibit** A.

8.       The *Kili* OC alleges that the *Kili* Action is brought by and on behalf of the approximately 7,000 individuals who make up the People of Bikini Atoll ("People of Bikini") who were relocated, or whose ancestors were relocated, in the 1940s and 1950s by the United States government so nuclear testing could be performed on their ancestral islands in the Pacific.  The *Kili* Action is also brought by the governing body for the People of Bikini (the "Counsel"), and certain individual members of the Counsel.  (*See* Ex. A, *Kili* OC ¶¶ 10-12).

9.      The *Kili* OC alleges that the United States Government funded two trusts for the benefit of the People of Bikini: The Resettlement Trust Fund for the People of Bikini (the

"Resettlement Trust") and the Bikini Claims Trust Fund Agreement (the "Claims Trust") (each individually a "Trust" and, collectively, the "Trusts").  (*See, e.g., id.* ¶¶ 2-3).

10.    The *Kili* OC asserts that both Trusts were created for specific purposes and were and are subject to restrictions on the use of Trust funds.  (*See, e.g., id.* ¶¶ 28, 31, 37, 44-45, 48).

11.    According to the *Kili* OC, on May 31, 2018, Arden was appointed trustee of the Claim Trust, replacing another trust company.  (*Id.* ¶ 46).

12.    The *Kili* OC alleges that Arden knew or should have known the purpose of the Claim Trust and the restrictions on Claim Trust distributions.  (*Id.* ¶ 49).

13.    The *Kili* OC asserts that from 2018 to 2022, Arden failed to follow the Claim Trust's restrictions on distributions, including in 2018 distributing approximately $15.7 million from the Claim Trust when the maximum permissible distribution was around $1.594 million.  (*See, e.g., id.* ¶ 50).

14.    According to the *Kili* OC, the value of the Claims Trust was approximately $59.1 million when Arden became its trustee but—due to wrongful excessive distributions that Arden made—the Trust's value fell to $28.7 million by the time Arden was removed as trustee in 2023.  (*See, e.g., id.* ¶ 52).

15.    The *Kili* OC alleges that on November 30, 2018, Arden was appointed trustee of the Resettlement Trust, replacing another trust company.  (*See, e.g., id.* ¶¶ 36-37).

16.    The *Kili* OC asserts that a prudent trustee would have, *inter alia*, been aware of the Resettlement Trust's history and been aware of and followed requirements limiting annual expenditures.  (*See, e.g., id.* ¶ 37).

17.     According to the *Kili* OC, Arden repeatedly failed to follow a requirement limiting the Resettlement Trust's annual expenditures and instead repeatedly made excessive distributions without obtaining necessary approval.  (*See, e.g.*, *id.*).

18.     The *Kili* OC asserts that Arden's actions led to the Resettlement Trust's decimation from $60 million to only $89,000.  (*See, e.g.*, *id.*).

19.     A First Amended Complaint (the "*Kili* FAC") was filed on December 5, 2024, and is currently the operative complaint in the *Kili* Action.  A true and correct copy of the *Kili* Action FAC is attached as **Exhibit** B.

20.     The allegations in the *Kili* OC and *Kili* FAC are substantially similar.

21.     The *Kili* FAC seeks relief including declaratory relief, an order tolling the statute of limitations, an order holding Arden personally liable for its alleged breaches and to restore the value of the trust property, an accounting, attorney's fees, and disgorgement of fees.

**The Policy**

22.     Great American issued Trust Services Liability Policy No. TRUE416623 to Arden Trust Company with a claims-made policy period of January 2, 2024 to January 2, 2025 (the "Policy").  A true and correct copy of the Policy is attached as **Exhibit** C.

23.     The Policy has a $10 million Limit of Liability and is subject to a $500,000 retention.

24.     The Policy is an indemnity policy, and it provides that the **Insured**, not Great American, has a duty to defend **Claims** against the **Insured.**  (Ex. C, Policy, Declarations, Item 6.).[1]

25.     The Policy's Insuring Agreement states:

_____

[1] Terms in **bold** are defined in the Policy.

The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from **Claims** first made during the **Policy Period** or the Extended Reporting Period against the **Insured** for which the **Insured** is legally obligated to pay for **Wrongful Acts** in rendering or failing to render **Trust Services**.

(Ex. C, Policy § I.)

26.    As the **Named Insured,** Arden is an **Insured** under the Policy.  (*See* Ex. C, Policy,

Declarations, Item 1.).

27.    The Policy defines **Loss** as:

**Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, and pre- and post-judgment interest. **Loss** shall also include punitive or exemplary damages and the multiple portion of any multiplied damage award to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has an adequate relationship to the relevant **Insured**. **Loss** shall not include:

(1)    taxes, or any amount that the **Company** is obligated to pay to any taxing authority;

(2)    criminal or civil fines or penalties imposed by law;

(3)    any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any customer or any forgiveness of debt, including any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit that has been sold;

(4)    any amounts incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of hazardous materials;

(5)    costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(6)    any amounts the **Company** is obligated to pay pursuant to any express written or oral contract or agreement; provided that this exception to the definition of **Loss** shall not apply to the extent such **Claim** alleges a breach of contractual obligations resulting from a **Wrongful Act**;

(7)  the depreciation (or failure to appreciate) in value of any investment product, including, but not limited to, securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

(8)  any restitution or disgorgement, or the payment of Loss (other than **Defense Costs**) which is attributable to restitution or disgorgement, or similar payments arising out of, or relating to, restitution or disgorgement, including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(9)  any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed; provided that damages shall be deemed insurable under this **Policy** if such damages are insurable under the law of any jurisdiction that is most favorable to the insurability of such damages and has a substantial relationship to the **Insureds**, the **Claim**, the **Insurer**, or this **Policy**.

(Ex. C, Policy § IV, "Loss," as amended by endorsement PT 4640 (10 18)).

28.  The Policy contains the following definition of **Claim**:

**Claim,** either in singular or plural, means any of the following instituted against an **Insured**:

(1)  a written demand for monetary damages or non-monetary relief;
(2)  a civil proceeding commenced by the service of a complaint or similar pleading;
(3)  a criminal proceeding commenced by a return of an indictment;
(4)  an arbitration or mediation proceeding in which monetary damages are sought;
(5)  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or
(6)  a written request to toll or waive a statute of limitations, relating to a potential **Claim** described in Subsections (1) through (5) above, that is received and reported during the **Policy Period** or, if applicable, **Extended Reporting Period**, by an **Insured**.

for a **Wrongful Act**, including any appeals from such proceedings.

(Ex. C, Policy § IV, "Claim").

29.  The Policy defines **Wrongful Act**, either in the singular or plural, as "any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by any **Insured** in rendering or failing to render **Trust Services**." (Ex. C, Policy § IV, "Wrongful Act").

30.    The Policy defines **Interrelated Wrongful Acts** as:

> any **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(Ex. C, Policy § IV, "Interrelated Wrongful Acts").

31.    Coverage under the Insuring Agreement is subject to, *inter alia*, the Policy's Exclusions set forth in Section V. In that regard, the Policy contains a Past Acts Exclusion (the "Past Acts Exclusion") that provides:

> **Past Acts Exclusion** – The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged **Wrongful Acts** committed on or before 01/02/2019 or any **Wrongful Acts** occurring on or after such date which together with **Wrongful Acts** occurring prior to such date would constitute **Interrelated Wrongful Acts**.

(Ex. C, Policy, § V., as amended by Endorsement PT 3140 (10 18)).

**The Coverage Dispute**

32.    On or about August 21, 2024, Arden tendered and provided notice of the *Kili* Action to Great American.

33.    On December 10, 2024, Great American issued a letter to Arden explaining that the Policy did not afford coverage for the *Kili* Action.  A true and correct copy of Great American's December 10, 2024 coverage letter (the "December 2024 Letter") is attached hereto as **Exhibit D**.

34.    As set forth in the December 2024 Letter, the Policy's Past Acts Exclusion bars coverage for the *Kili* Action because the *Kili* Action arises out of and in any way involves alleged **Wrongful Acts** committed on or before January 2, 2019.

35.    Further, the Policy's Past Acts Exclusion also bars coverage for the *Kili* Action because the *Kili* Action arises out of and in any way involves **Wrongful Acts** occurring on or after January 2, 2019 which, together with **Wrongful Acts** occurring prior to such date, constitute **Interrelated Wrongful Acts**.

7

36.     The December 2024 Letter also reserved all other rights and defenses Great American has under the Policy.

37.     On January 23, 2025, counsel for Kestra Financial—Arden's parent company— sent Great American a letter disputing Great American's denial of coverage for the *Kili* Action.

## COUNT I
## DECLARATORY JUDGMENT THAT THE PAST ACTS
## EXCLUSION PRECLUDES COVERAGE FOR THE *KILI* ACTION

38.     Great American repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

39.     The *Kili* Action alleges, *inter alia*, that Arden mismanaged the Trusts since Arden's May 31, 2018 appointment as trustee for the Claims Trust, including making Claims Trust distributions in 2018 nearly 10 times the authorized amount and continuing to make excessive distributions from both Trusts.

40.     The Policy's Past Acts Exclusion provides:

> The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged **Wrongful Acts** committed on or before 01/02/2019 or any **Wrongful Acts** occurring on or after such date which together with **Wrongful Acts** occurring prior to such date would constitute **Interrelated Wrongful Acts**.

(Ex. C, Policy, Endorsement PT 3140 (10 18).

41.     The *Kili* Action constitutes a **Claim** because it is a civil proceeding instituted against Arden that was commenced by the service of a complaint.  (Ex. C, Policy, § IV, "Claim").

42.     The Past Acts Exclusion precludes coverage for the *Kili* Action because the *Kili* Action arises out of and in any way involves actual or alleged **Wrongful Acts** committed on or before January 2, 2019.

43.     The Past Acts Exclusion further precludes coverage for the *Kili* Action because the *Kili* Action arises out of and in any way involves actual or alleged **Wrongful Acts** occurring after

January 2, 2019, which, together with **Wrongful Acts** occurring prior to such date, would constitute **Interrelated Wrongful Acts**.

44.     Accordingly, Great American is entitled to a declaration that the Policy does not afford coverage for the *Kili* Action because the Policy's Past Acts Exclusion precludes coverage for the *Kili* Action.

## COUNT II
## DECLARATORY JUDGMENT THAT THE POLICY
## DOES NOT AFFORD COVERAGE FOR DISGORGEMENT

45.     Great American repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

46.     The *Kili* Action seeks disgorgement of any and all fees Arden received as trustee of the Trusts.  (Ex. B, *Kili* FAC ¶ 42).

47.     The Policy's definition of **Loss** provides that **Loss** shall not include "any restitution or disgorgement, or the payment of **Loss** (other than **Defense Costs**) which is attributable to restitution or disgorgement, or similar payments arising out of, or relating to, restitution or disgorgement, including but not limited to the return of fees, commissions or charges for the **Company's** services."  (Ex. C, Policy § IV, "Loss," as amended by endorsement PT 4640 (10 18)).

48.     Great American is entitled to a declaration that the Policy does not afford coverage for the disgorgement sought in the *Kili* Action.

## COUNT III
## RESERVATION OF RIGHTS

49.     Great American repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

50.     Along with seeking the declaratory judgments identified above, Great American continues to reserve its right to deny or limit coverage under the Policy for the *Kili* Action under all other provisions of the Policy, under applicable law, and in equity.  Developments may render additional defenses to coverage ripe for judicial determination.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Great American requests the following relief:

(a)     A judgment declaring that the *Kili* Action is excluded from coverage under the Policy by the Policy's Past Acts Exclusion;

(b)      A judgment declaring that the Policy does not afford coverage for the disgorgement sought in the *Kili* Action; and

(c)     Such other and further relief as the Court deems just and proper.

April 30, 2025                          SMITH, KATZENSTEIN & JENKINS LLP

                                        */s/ Julie M. O'Dell*
                                        Robert J. Katzenstein (378)
                                        Julie M. O'Dell (6191)
                                        1000 West Street, Suite 1501
                                        P.O. Box 410
                                        Wilmington, DE 19899 (courier 19801)
                                        (302) 652-8400
                                        rjk@skjlaw.com
                                        jmo@skjlaw.com

Of Counsel:

Brent H. Olson (*seeking admission pro hac vice*)
DYKEMA GOSSETT PLLC
1301 K Street NW, Suite 1100W
Washington, DC 20005
(202) 906-8600
bolson@dykema.com

                                        *Attorneys for Plaintiff Great American Security*
                                        *Insurance Company*